## SCHILLING et al. *v.* ROMINGER.

1. The first appropriator of the water of a natural stream has a prior right to such water to the extent of his appropriation.

2. Parties by their joint acts may acquire common rights to appropriate water for the purposes of irrigation unaffected by the statute of frauds. Such right is not only given by statute, but, in a country with a climate like Colorado, arises *ex necessitate rei.*

3. Notwithstanding the omission of formal averments, yet when the facts set out in the bill disclose a case properly invoking the aid of chancery jurisdiction, a court of equity will not refuse to look into the substance of the bill for the purpose of granting the relief to which the facts alleged show the complainant to be *prima facie* entitled.

4. When a court of equity has once acquired jurisdiction of a case, it may give entire relief, notwithstanding that for a part of such relief the complainant might have a remedy at law

5. This court will not reverse a decree upon a point which the court below was given no opportunity to pass upon, and when the objection, had it been made in the court below, might have been obviated.

*Appeal from District Court of Saguache County.*

THE complainant's bill states in substance :

That complainant on the 26th of June, 1874, settled upon the west half of north-west quarter, the south-east quarter of north-west quarter and the south-west quarter of north-east quarter of section twenty-one, township forty-five, north, range 10, east New Mexican Meridian, as a homestead and that he has continued to reside thereupon. That theretofore on the 29th of April, 1874, the defendant Schilling settled upon the west half of south-east quarter and the east half-of south-west quarter of section twenty-one, township forty-five north, range 10 east New Mexican Meridian, adjoining complainant's lands, and that Schilling, the defendant, con-

tinues to reside thereon. That the said land of defendant Schilling is occupied and cultivated by him and the defendant Albers, as tenants in common. That in July, 1874, complainant and defendant Schilling and Albers agreed to construct an irrigating ditch from a point on Major creek, in said county of Saguache, four or five miles distant from their said lands, by the terms of which agreement the complainant was to have one-half of the water to be run in said ditch from said creek, and defendants Schilling and Albers the other half. That pursuant to said agreement, complainant and defendants Schilling and Albers constructed said ditch to and upon their said lands and thereby took all the available water from Major creek and prevented the same from wasting. That said Major creek is a small stream without more water than is necessary to irrigate the lands of complainant and defendants Schilling and Albers, and otherwise than from said creek their said lands are without irrigating facilities. That at the time of their said appropriation of the water of Major creek, the same was not owned or claimed by any other person than complainant and defendants Schilling and Albers. That on or about November 31, 1874, defendants E. W. Bennett and Ira S. Bennett settled upon lands over which said ditch was constructed, and knowing of the said appropriation of the water in Major creek on the 1st of June, 1876, they began to claim and use water from said creek and obstructing the flow of the water therein by shutting off the same and constructing other ditches from said creek, and now continue so to do, and, aided and encouraged by defendants Schilling and Albers, totally deprived complainant of the use of any part of said water. That complainant has planted upon his lands fifteen acres of oats which have failed to grow and mature by reason of the said interference, in consequence of which he has lost said crop and is damaged not less than $300. That complainant has applied frequently to said defendants, Schilling, Albers, E. W. and Ira S. Bennett, to allow him the use of the water in said ditch and to

desist from further obstruction of the flow of the water therein, but confederating together to injure him, the said defendants refuse to allow him any part of said water, or to desist from obstructing the same in said ditch, and sometimes denying and at other times admitting the interest of complainant in the water of said ditch, but at same time deny and prohibit him by force and threats from the use of any part of said water ; prays that defendants be decreed to make satisfaction to complainant for all damages done by them ; that said defendants by injunction of said court be restrained from obstructing the flow of water in said ditch, and from using more than one-half of same and from interfering with complainants in the use and enjoyment of one-half of said water ; that defendants be compelled to fill up the new ditches cut by them, and to re-open those made by complainant and defendants Schilling and Albers, and to restore them to same condition as when filled up by said defendants. Prays for writ of injunction therefor and for summons."

The only material averment in the answer necessary to be inserted here is in reference to the agreement alleged in the bill and to which the defendant answered :

"That in July, 1874, complainant proposed to defendants Schilling and his tenant, Albers, that they vacate a portion of their said ditch, adjacent to said Major creek, and that complainant and defendants (Schilling and Albers) would take out a ditch near the mouth of the canon, two miles further up said creek, and by so doing they would furnish a new channel for the flow of said water and save the same from sinking as it did in the old bed of said creek ; and by so doing they would have two heads of water reaching the said land of defendant Schilling. That it was agreed between defendants Schilling and Albers and the complainant, that if by so constructing said ditch there was not more water than was necessary to irrigate the lands of said Schilling, and for his domestic uses, then complainant would not claim any interest in either said ditch or the

water flowing therein." And that the ditch was constructed in accordance with this agreement. Replication was filed and the cause was referred to a master to take proofs. Upon the coming in of the master's report, the cause was heard upon the bill, answer, replication and report, and a decree rendered in favor of the plaintiff in accordance with the prayer of the bill, and damages were awarded in the sum of $187.50. The defendants prayed an appeal. In this court the appellants assign for error: " 1. That the agreement between the appellants and appellee was within the statute of frauds and void. 2. The decree is not sustained by the evidence taken before the master. 3. The court had no jurisdiction of the subject-matter."

Mr. CHAS. W. TANKERSLY, for appellants.

Messrs. CHARLES & DILLON, and LOVE & VAN LIEW, for appellees.

STONE, J. That the first appropriator of the water of a natural stream has a prior right to such water, to the extent of his appropriation, is a doctrine that we must hold applicable, in all cases, respecting the diversion of water for the purpose of irrigation. Hence, the prior appropriation of the water of Major creek by Schilling, by the construction of the ditch for the irrigation of his land, secured to him a prior right to the use of such water to the extent of such appropriation. But when under a subsequent agreement with Rominger, the appellee, a new acequia was constructed by Schilling, Albers and Rominger, whereby all the water of the stream was appropriated at another point higher up the stream, for the purpose of procuring a greater supply of water, sufficient for all three, and upon the agreement that Rominger should share and enjoy the use of the water thus obtained in common with the other two, the prior right which had theretofore been acquired by Schilling and enjoyed by him and his co-tenant Albers, was waived by them, and a new right then accrued to the parties simultaneously, to

use the water in common to the full extent of their joint appropriation. The right thus acquired by the appellee accrued to him in virtue of the joint acts of the parties in thus appropriating the water whereby they acquired a common right unaffected by the statute of frauds, inasmuch as such right is not only given by statute, but in a country with a climate like ours, this right arises *ex necessitate rei*, and hence the statute may be regarded as declaratory merely of the law of necessity in this respect, and as regulating the right thus acquired. *Yonker v. Nichols*, 1 Col. 551.

If Schilling and Rominger had both settled on the stream at the same time, and for mutual advantage in the saving of expense, had, by agreement, constructed the ditch together, and thus appropriated the water jointly for irrigating their respective lands, it certainly could not be contended that the respective rights to the water thus acquired could be asserted by either as against the other, on the ground that the mutual assent or agreement to thus appropriate the water was not in writing. So in this case, there was no more a license or grant from one than from the other. Schilling could abandon his first acequia and waive his right of prior appropriation as effectually by words and acts as by an instrument in writing. And the agreement to share equally in the use of the water as between Schilling and his co-tenant Albers, on the one side, and Rominger on the other, was no more, in effect, than an assent by the parties to the acquisition of rights which accrued under the law as declared by the statute, upon such joint construction of the ditch, and the cotemporaneous appropriation of the water thereby. Upon this branch of the case we regard the doctrine of *Yonker v. Nichols, supra*, so fully applicable that it is unnecessary to repeat here the reasoning of the court in the well-considered opinions in that case.

It may, however, be objected that while what we have said thus far in relation to the respective rights of Schilling and Rominger applies, unquestionably, to these rights so far as they relate to that portion of the ditch jointly con-

structed by them, yet that since the other portion of the ditch constructed by Schilling belonged to him solely, the right of Rominger to its use was an easement which could be conveyed by deed only, as an interest in land.

As to this, we think it need only be remarked that there was no pretense of a conveyance to Rominger of any ownership or interest in the ditch, as such; the agreement was simply that upon constructing the new part of the ditch, Rominger should have one-half of all the water that flowed through the entire ditch—old and new together—to the lands of both parties. Under this agreement, then, Rominger was entitled to half the water and a usufructuary right to the flow of such water in common with Schilling, through the entire length of the ditch. While Rominger's right to such use of the old part of the ditch is derived from the agreement, yet that agreement must be regarded as an entirety; there was no separate contract respecting the old part.

It was undoubtedly in Schilling's power at the time of the agreement to have exacted from Rominger contribution for part of the expense of construction of that portion of the old ditch which they were to use thereafter in common, but he did not ask such compensation; no allusion was made to this subject. Schilling has not sought to assert an exclusive ownership in the old part of the ditch as a ground of his denial of water to Rominger, nor is a question based upon such claim raised in the case in any manner. It is, therefore, not necessary for us to decide whether an irrigating ditch or any interest therein must be conveyed by deed alone, nor whether the use thereof as a permanent easement must be so conveyed. In either case, since part performance of a parol contract respecting land will take it out of the statute of frauds, equity will enforce the right thus acquired. In this case there was more than part performance; there was entire performance. The agreement was wholly executed, and an uninterrupted user thereunder for two years. *Bloomstein* v. *Clees*, N. Chancery Court (Tenn.), 6 Cent. Law Jour. 50.

The objection made by counsel for appellants under the third assignment of error, that the court had no jurisdiction of the subject-matter, for the reason alleged that there is no averment in the bill that the complainant was without a full, complete and adequate remedy at law is not well taken. Notwithstanding the omission of such formal averment, yet where the facts set out in the bill disclose a case properly invoking the aid of chancery jurisdiction, a court of equity will not refuse to look to the substance of the bill for the purpose of granting the relief to which the facts alleged show the complainant to be *prima facie* entitled.

And where a court of equity has once acquired jurisdiction of a case it may give entire relief, notwithstanding that for a part of such relief the complainants might have a remedy at law. The decree for damages was, therefore, properly within the jurisdiction of the court. Story's Eq. Jurisp., §§ 64, 71, 76, 457; Bispham's Prin. Eq., § 30; High on Injunct., §§ 258, 459, 515, 545, 559, 564; note 2, 695; *Armstrong* v. *Gilchrist*, 2 Johns. Cases, 431; *Rathbone* v. *Warren*, 10 Johns. 587; *King* v. *Baldwin*, 17 id. 384.

But were this not true, the objection to the jurisdiction cannot, we think, in this case be raised for the first time in this court. Such objection, as a general rule, must be taken by plea, demurrer or otherwise in the court below, in order to give that court an opportunity to pass on it, and if held valid the complainant be allowed his remedy by amendment or otherwise. This court will not reverse a decree upon a point which the court below was given no opportunity to pass upon, and where the objection, had it been made in the court below, might have been obviated, as is apparent from the record might have been done in this case. *Mosselman* v. *Cain*, 21 How. Pr. 248; *Beekman* v. *Frost*, 18 Johns. 558; *Bidwell* v. *Ins. Co.*, 16 N. Y. 267; Powell's Appellate Proceed. 132, 156, 178, 204.

The authorities make a distinction between jurisdiction as to the person and jurisdiction as to the subject-matter,

holding that in the latter case it is not essential for the purpose of review in the appellate court, that objection should be made in the court below for want of such jurisdiction. But, here, while the error assigned is against the jurisdiction of the court over the subject-matter, the sole ground urged in support of the assignment is, that the bill does not contain certain formal averments, such as that the complainant has not a complete remedy at law; that the defendants are insolvent or irresponsible and the like. The bill, however, sets forth sufficient facts to bring the case within the equitable jurisdiction of the court; such objection if valid might therefore have been obviated, if made in the court below, and for this reason comes within the general rule. Powell on Appellate Proc. 132, note 3; 1 Daniel's Ch. Pr. (4th ed.) 555, and cases cited; *Gordon* v. *Clarke*, 22 Cal. 533.

It is also assigned for error that the evidence does not sustain the decree. Under this assignment it is contended that a preponderance of the testimony shows that the agreement for the joint construction and use of the ditch was upon a condition that more water would be thereby obtained than was needed by Schilling and Albers. In their answer to complainant's bill, the defendants below aver that it was agreed between Schilling and Albers and the complainant "that if by so constructing said ditch there was not more water than was necessary to irrigate the lands of the said Schilling, and for his domestic uses, then the complainant would not claim any interest either in said ditch or the water flowing therein."

The evidence in support of this averment is that of two of the appellants, Schilling and Albers, who both testify that Rominger agreed when they constructed the new ditch, that "if there were not two heads of water in the ditch, he would not claim any of the water in the ditch or creek."

There was no evidence proving the size or amount of a "head" of water, and the testimony on that point leaves the definition as vague and undetermined as the traditional "piece of chalk."

But this alleged condition of the agreement is positively

denied by Rominger, and the admitted facts as to the joint use of the water strongly rebuts the probability of such condition. Upon the completion of the ditch, and for two years thereafter, Rominger was allowed a common and uninterrupted use of the water, without, so far as the testimony shows, any denial by Schilling or Albers of such use, or that they ever hinted at there being less than " two heads " of water, or that there was an insufficiency for both parties, or that there was any such condition as is set up in the answer to the bill. The denial of water to appellee seems to have arisen after the settlement of the Bennetts, and their use of the water by permission of Schilling and Albers in the fall of 1875.

The acts of Schilling and Albers thus appear to contradict their testimony as to the conditional use of the water by Rominger, else we must conclude that if there was any such condition originally, it was either waived afterward, or that the condition was in fact fulfilled by obtaining the two heads of water referred to.

It is argued that the testimony of the witness Schultz, that in October or November, 1874, he heard Rominger say that if they got two heads of water in the ditch, he would get one head, otherwise he could not get any thing, corroborates the testimony of Schilling and Albers on this point; but the undisputed evidence in the case proves that the ditch was completed in July, 1874, and that Rominger had the use of the water for irrigating his crops in August thereafter, so that we are forced to believe that this testimony of Schultz to the effect that in the following October or November Rominger was speculating as to the amount of water to be obtained, and his chance of getting any, is without probability or weight.

This being the only material point in dispute in the evidence, we think the court below was warranted in rendering the decree, and that this court would not be justified in disturbing it on the ground of lack of evidence to support the decree.

*Decree affirmed.*

ELBERT, J. I concur in the result.

THATCHER, C. J.    I coincide with the conclusion reached by brother STONE, but so far as it is intimated in the opinion *in arguendo*, that a servitude over the lands of another in this State for the purpose of irrigation can only be created by deed, I do not concur.    Primarily, where the climatic conditions are such as exist in Colorado, the right to convey water for irrigating purposes over land owned by another is founded on the imperious laws of nature, with reference to which it must be presumed the government parts with its title.    And although a patent from the government may be silent in regard to conditions, which, if expressly named, would have no greater force, it cannot be asserted that therefore they do not exist.  *Yonker* v. *Nichols*, 1 Col. 551.

Subject to regulation by statute and resting upon the law of nature, it is conceived that the right to convey water over another's land is inseparable from the enjoyment of the land which the United States conveys to its grantees.    This right passes with the estate in the land as a necessary incident.