Reed, P. J.,
delivered the opinion of the court.
The controversy in this case arose, as in many others all over the state, in claiming and decreeing a' much greater quantity of water than the supply stream furnished. In nearly all decrees for water rights and the distribution of water, no account was taken of the supply from which the water was to be drawn. Beaver Creek, from which all the conflicting ditches were to be supplied, was of limited capacity, and the water allotted to either ditch would have exhausted it.
There was very little conflict in the testimony. Most of it was directed to ditch of appellants in an attempt to show *241 that by virtue of its construction and appropriation of water it was entitled to a greater amount as its first priority of July 28, 1885, which was decreed to be 90 cubic feet per minute. The second appropriation by enlargement, of the date of March 3, 1887, was 420 cubic feet per minute, making the aggregate 510 cubic feet. The contention was not that the proprietors were entitled to more than the aggregate quantity, but that they were entitled to the full quantity-under the first priority of July 28, 1885. The testimony in regard to the Smith & Neve ditch and the Smith ditch was very meager, and while, perhaps, sufficient to establish the date of commencement of construction, was hardly sufficient to establish the date of application of the water to the land, and the quantity the ditches carried; — while in the Clark ditch there was no testimony. It appears to have been established by the evidence, and practically conceded, that appellants were the first to appropriate and apply the water of the stream.
The finding of the court as to the facts, under the well settled rule of this court, will not be reviewed. It appears to have been fully warranted by the evidence. The only question is whether, under the constitution, statutes, and state decisions, the court properly applied the law to the facts as found.
Appellants commenced construction at a point too far down stream to get the necessary fall. The ground was flat, and, by its loose, open and rocky character, unfit to carry water. A small quantity was carried through it. For the first 1,200 feet the ditch was small and inadequate. From that point down it was dug larger, and by reason of greater-fall was capable of carrying a large quantity, if not the entire volume claimed. Early in the spring of 1886 water was taken through the ditch, about 20 acres under it planted in crops and irrigated. "Work was done upon the ditch in the summer and fall, and perhaps winter of 1886. In the spring of 1887 the head of the ditch was moved up the stream about 400 feet, to obtain necessary fall, a new ditch dug, about *242 1,200 or 1,400 feet long, intersecting and discharging into the original ditch. Dbring the year 1887 three of the owners used water from the ditch, irrigating land variously estimated by different witnesses from 45 to 47 acres. In the interim, and before the change was made in the head and alignment of the ditch, the water rights of the Clark ditch (September 5, 1885), the Smith ditch (November 20, 1886), and Smith & Neve ditch (February 26, 1887), attached.
In determining the amount of water appropriated by appellants we are not aided, but confused, by the declaration of the parties. It was not executed and verified until March 2, 1888, and is so at variance with the testimony of the same party, and the facts as established, that it is worse than none. It'is said: “The date of the appropriation of water by the original construction of said ditch is the 28th day of July, 1885, and the amount of water claimed by and under such construction is thirty cubic feet per second of time.”
The date of appropriation by enlargement of said ditch is of March, 1887, and the amount of water claimed by and under such enlargementis twenty cubic feet per second of time, and'‘the capacity of the ditch at that date (1888) was stated to be. 30 cubic feet per second, making the first appropriation and priority 1,800 cubic feet of water per minute, and by enlargement 1,200 cubic feet per minute, aggregating 3,000 cubic feet, when all that was attempted in proof was from July 28, 1885, to March 3, 1887, 90 cubic feet per minute, with no ditch capacity for carrying it, and after the last date 510 cubic feet per minute.
Upon the trial much testimony was taken in regard to the intention of the parties at the time of the first appropriation. Such intention, unless established by notice, or in some other public manner, could in no way be known to or control others wishing to take water from the same stream, and such intention could only be inferred or deduced, first, from (the capacity of the ditch at its head, and perhaps, second, rthe amount of irrigable land of the ditch proprietors upon which it could reasonably be supposed that they intended to apply it.
*243 By the testimony it was shown that at the time of the alleged appropriation in July, 1885, the only parties in interest and who had land to he covered by the ditch were George W. Taughenbaugh, John F. Taughenbaugh, and House. In the fall of that year W. A. Taughenbaugh located a claim. In the spring of 1886 F. M. Taughenbaugh located a claim. Elrod bought the claim of W. A. Taughenbaugh in the fall of 1887. At what time F. M. Taughenbaugh located his claim is not stated, but presumably in 1886, as we first hear of him as working on the ditch in that year. George W. Taughenbaugh testified: “ Elrod bought in the ditch in the fall of 1887. He bought of W. A. Taughenbaugh, who came in like my father, by enlargement right.” He also testified that J. A. Taughenbaugh, House and himself were the original owners; consequently the original appropriation could only have been for the irrigable land of those three, as it is expressly stated that the others came in under the enlargement, which was not made until the spring of 1887. Taking these facts, the intention of these parties at the time of the first appropriation and application cannot be extended so as to include parties who had neither interests in the ditch nor land upon which to apply water.
That the later parties did not consider themselves entitled to any rights under the original appropriation, and also realized the inadequacy of the appropriation and the ditch as designed and excavated, is evidenced by the fact of the change and enlargement of the ditch in the spring of 1887. The court was warranted, under the law, in finding the original appropriation to have been only for the three claims, and the amount of water applied, previous to the spring of 1887, quite limited, both by the faulty construction of the ditch .and the small number of acres upon which water was to be applied, and that it could not have exceeded, if it equaled, the claim of 90 feet per minute.
The court was also warranted in finding that respondent’s rights by appropriation antedated the appropriation of the *244 later claimants, and that their rights had attached before an effort was made to enlarge the ditch and take the water.
The inequitable character of the claim that all present owners in the ditch should be decreed to have rights relating back to the date of the first appropriation and cutting out intervening appropriators becomes apparent.
I shall not attempt to determine the question whether the undertaking by the three original proprietors was prosecuted with diligence and completed within a reasonable time. All authorities agree that both are conditions precedent to the right to the use of water.
“ Appropriation is the intent to take, accompanied by some open, physical demonstration of the intent and for some valuable use.” Larimer County Res. Co. v. People, 8 Colo. 616; Thomas v. Guiraud, 6 Colo. 533; Farmers' Canal Co. v. Southworth, 13 Colo. 114; McDonald v: Bear River Co., 13 Cal. 220.
“ To constitute a legal appropriation, the water must be applied within a reasonable time to some beneficial use; that is, the diversion ripens into a valid, appropriation only when the water is utilized by the consumer.” Platte Water Co. v. Irrigation Co., 12 Colo. 531; Farmers' Canal Co. v. Southworth, 13 Colo. 115.
It was wisely and humanely said in Sieber v. Frink, 7 Colo. 154: “ What shall constitute such reasonable time is a question of fact depending upon the circumstances connected with each particular case.” Men of limited means, pioneers in a new territory, who have not only to “grub” and clear land, but erect houses, and provide means of living while making a home, should not be held to the same rule with those more favored and having abundant capital. As long as the settler in the desert does not abandon, but continues in good faith to prosecute his construction of a ditch and the application of water to his land as rapidly as his means and circumstances will permit, he should be held to be within the limit of a “reasonable time;'' nor should his incipient construction and application of water be held as the extent of the *245 appropriation. When land requires clearing and grubbing to prepare it for cultivation, the law should not and does not require a man to apply water to 160 acres where he can only cultivate 10 acres. Hence the wisdom of statutory provisions requiring a claimant of water to file a plat and statement as public notice of intention and the extent of the right claimed. The diligent and enterprising pioneer who attempts to wrest a home from the arid desert should secure water rights adequate to his wants.
In this instance no plat or declaration of intention appears to have been filed as a notice to others, but as no question is raised in regard to it, it must be considered as waived.
Cross errors were filed by appellees, but the questions presented were those of fact, and seem to have been properly disposed of by the court.
It cannot be said that the original allotment of 90 cubic feet of water to the three original claimants was excessive in quantity or insufficient for the three farms. If the appropriation of the other ditches was excessive, the court very properly reduced them. If the water in appellants’ ditch was not sufficient for all owners, the three original proprietors are entitled to priority in the distribution of the water, and the later comers must take as of the date of their appropriation, and suffer the consequences of delay as in all other cases where there is not an adequate supply of water. By reducing the volume of water allowed respondents’ ditches, the ditch of appellants will practically get all the water to which it is entitled. The decree appears to have been just and equitable, and will be affirmed.

Affirmed.