COMBS ET AL. V. THE FARMERS' HIGH LINE CANAL AND
RESERVOIR COMPANY ET AL.

1.  Pleading—Demurrer Considered as a Motion for Judgment on
    the Pleadings—Dismissal.

Where a demurrer was filed to a replication and treated, by
agreement of the parties and consent of the court, as a motion
for judgment on the pleadings, and one of the defenses was a
general denial of the material averments of the complaint and
no evidence was heard or offered, a judgment of dismissal is
proper.—P. 423.

2.  Water Rights—Irrigation Statutes—Adjudication of Priorities
    of Ditches—Individual Priorities.

Our irrigation statutes are in the nature of police regulations
to secure the orderly distribution of water for irrigation pur-
poses, and to this end they provide a system of procedure for
determining the priorities of rights as between carriers. Pri-
ority, however, is a relative term, and an adjudication of priorities
is the judicial determination of the claims of different parties
to the use of water for irrigation within the same district. The
decree is required to specify, among other things, the amount
of each party's appropriation and the order in which he is en-
titled to enjoy the same, and to do this the claims of the several
parties must be considered in the same proceeding; and, while
no ascertainment is made as to who are consumers under any
particular ditch, necessarily the relative rights of ditch owners
and all consumers are determined.—P. 428.

3.  Water Rights—Complete Appropriation—Diversion through
    Carrier.

A completed appropriation of water consists of a diversion
of water from a natural stream and the successful application
thereof, within a reasonable time thereafter, to some beneficial
use. Where the consumer of water makes the diversion himself,
a completed appropriation is made by the same person; but
where the diversion is made by a carrier and the successful
application is made by another who is the consumer, a completed
appropriation is the result of their combined acts.—P. 429.

4.  Water Rights—Decree—Conclusiveness—Persons Concluded.

A decree rendered in a proceeding under § 19, p. 99, Sess.
Laws 1879, and the amendatory act of 1881, Sess. Laws 1881,
p. 142—which confer jurisdiction on the district courts to adjudi-
cate the priorities of water rights for irrigation in the several

water districts of the state, and which provide for service of notice upon all persons interested as owners or consumers of water to appear at the hearings provided for therein—which purport to settle all the relative priorities of rights to the use of water for irrigation from a natural stream in a certain water district, including the rights of a company organized as a carrier of water for hire, is conclusive as to the persons receiving water from such carrier, for such decree embodies the rights, not only of the carrier, but also the rights of its consumers.—P. 429.

5. **Water Rights—Irrigation Statutes—Judicial Notice—Decrees —Distribution of Water.**

The supreme court takes judicial cognizance of the irrigation statutes of the state, which provide that the distribution of water for irrigation from the natural streams must be made in accordance with the decrees of court in the statutory proceeding provided for, and not otherwise; and, after such decrees are rendered, distribution of water for irrigation purposes cannot be, and has not been, otherwise made; and attempted denials of parties that they have recognized such decrees or received their appropriations thereunder, are unavailing.—P. 432.

*Error to the District Court of the City and County of Denver.*
*Hon. Chas. C. Holbrook, Judge.*

Action by Charles J. Combs, Harvey Stewart, Thomas Reynolds, John Risdon, Thomas R. Burch, David Brothers, Henry Lee, Joseph Pearson, A. A. Clough, John Tobias, James Truelson, Minnie Dieter, C. H. Vogler, Ray Chamberlain, C. T. Willmore, Albert Wolff, V. DeVinnery, C. B. Gleason, N. S. Kaine, W. H. Horne, John W. Robb, Mat Thorp, John Conway, Thomas Phillips, Abraham Slater, Neal Everett, Mrs. T. R. Burch, G. H. Willmore, W. J. Marian and Kate Coulehan, against The Farmers' High Line Canal and Reservoir Company, a corporation, A. J. McCune, State Engineer of the State of Colorado, J. J. Armstrong, Superintendent of Division No. 1, and Alex. McLean, Water Commissioner of Water District No. 7. From a judgment for defendants, plaintiffs bring error.

*Affirmed.*

Mr. SAMUEL W. JOHNSON (Mr. THEODORE H. THOMAS, of counsel), for plaintiffs in error.

Mr. GEORGE W. TAYLOR, for defendants in error.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

The plaintiffs below, plaintiffs in error here, as owners respectively of separate rights to the use of water for irrigation, which hitherto have been, and now are, diverted and carried through the Rocky Mountain ditch by its owner, The Rocky Mountain Water Company, a corporation organized as a carrier for hire, brought this action against The Farmers' High Line Canal and Reservoir Company, a mutual company formed for the purpose of diverting and carrying water for irrigating lands of its own stockholders, to quiet, as against defendant company, the several titles of plaintiffs, as appropriators and consumers of water.

The state officers empowered to distribute the water of the natural streams in the water district for purposes of irrigation were made defendants. Their answer to the complaint may be disregarded, as it merely sets forth the statutory authority under which they are acting, and the validity of their acts depends upon the rights of their co-defendant company. The answer of that company consists of eleven separate defenses, the first of which is a general denial, and of the other ten, only those which set up, in different ways, a former decree as *res judicata* of the present controversy, are material to this decision.

To the separate defenses of this answer, plaintiffs filed a replication which put in issue some of the new defensive matters, but much of the replication, as is true of the other pleadings, consists of allegations in the nature of conclusions of law, to which, it seems, no objection was urged at the hearing, or

is now interposed.   There was a demurrer by the
defendant High Line Company to the replication,
which, by agreement of parties and consent of the
court, was considered as a motion for judgment on
the pleadings.   The court sustained the motion, and
entered judgment upon it, dismissing the action.   To
review that judgment, plaintiffs have sued out this
writ of error.

Since no evidence was heard or offered by any
of the parties, and as the first defense of the answer
is a general denial of the material averments of the
complaint, the judgment dismissing the action might
be affirmed upon that ground alone.   But defendants
do not invoke the benefit of that point, and, as both
parties sought and obtained the decision of the trial
court upon the effect of the former decree, pleaded
as a bar by the defendants, we should give attention
to such defense.   The ruling of the trial court there-
upon is the principal, if not the only, question dis-
cussed by plaintiffs; though defendants, for the af-
firmance of the judgment, rely upon various other
propositions, concerning all of which we express no
opinion, as our affirmance of the judgment is based
entirely upon the proposition that plaintiffs are
estopped by the former decree.

Because the various pleadings contain so many
allegations which are mere conclusions of law, it
might be difficult to ascertain what allegations of fact
of the complaint have been admitted and what denied
by the answer, and what allegations of fact in the
affirmative defenses of the answer have been admit-
ted and what denied in the replication.   But counsel,
in their briefs, have relieved us of that task by as-
suming that the record presents a state of facts which
calls for a determination of the effect of the former
decree interposed by the defendant company as *res
judicata* of the rights which plaintiffs assert as con-

sumers of water for the purpose of irrigation. That decree, rendered by the district court of Arapahoe county in 1884, in a proceeding instituted under the statutes hereinafter mentioned, purported to settle all the relative priorities of right to the use of water for irrigation of all ditches, canals and reservoirs taking water from the natural streams within water district No. 7, which included the Rocky Mountain ditch and the defendant company's ditch involved in the present action. By that decree, the priority of the ditch of defendant company, as to the particular amount of water herein involved, was determined to be earlier in time than, and superior to, the priority awarded to the Rocky Mountain ditch, from which the plaintiffs have received and enjoyed their appropriations. In that proceeding, the Rocky Mountain Water Company and the defendant company, owners of these two ditches, as well as various other ditch owners, appeared and offered proofs, and received their respective decrees. The quantity of water allotted to the Rocky Mountain ditch was made up of the several appropriations of its many consumers, including the priorities which the plaintiffs assert in this action.

Briefly stated, the contention of the defendant company, by its plea of *res judicata*, is, that the cause of action set up in the complaint in the pending action has been adjudicated and determined by this decree in the statutory proceeding, to which plaintiffs were parties through their legal representative, and they should not be allowed again to litigate the same matter. The plaintiffs say that the subject-matter of this is distinct from that set up in the former action or proceeding; in which such decree was rendered; that, in that proceeding, plaintiffs' present causes of action and the subject-matter of this litigation not only were not then before the

court, but could not be there litigated, as plaintiffs were not parties thereto, and the statutes contemplate no such ascertainment.

Additional facts which this record discloses, to all of which we are asked to apply the law, may thus be stated: The Rocky Mountain Water Company is a corporation organized under the laws of this state as a carrier of water. It diverts from a natural stream (Clear Creek), in water district No. 27, and, by means of its ditch, called the Rocky Mountain ditch, for hire carries and supplies to the plaintiffs water for irrigating their agricultural lands. The plaintiffs always have enjoyed the use of their rights to use their appropriations of water through this ditch. The defendant, Farmers' High Line Company, is a mutual ditch company, organized for the purpose of diverting water from the same stream in the same district, and delivering the amount so diverted to its stockholders for irrigating their lands which lie under defendant company's ditch.

Such were the conditions when our first statute concerning the adjudication of priorities to the use of water was enacted in 1879, and when the amendatory act of 1881 was passed. The object of these acts was to settle the priority of rights to the use of water for irrigation in the respective water districts in the state. Section 19 of the first act is as follows:

"For the purpose of hearing, adjudicating and settling all questions concerning the priority of appropriation of water between ditch companies and other owners of ditches drawing water for irrigation purposes from the same stream or its tributaries within the same water district, and all other questions of law and questions of right growing out of or in any way involved or connected therewith, jurisdiction is hereby vested exclusively in the district

court of the proper county."—Session Laws 1879, p. 99.

Section 1 of the act of 1881 reads: "In order that all parties may be protected in their lawful rights to the use of water for irrigation, every person, association or corporation owning or claiming any interest in any ditch, canal or reservoir, within any water district, shall, on or before the first day of June, A. D. 1881, file with the clerk of the district court having jurisdiction   *   *   *   a statement of claim, under oath," etc.—Session Laws 1881, p. 142.

The contents of this statement are described in the same section, but its further reproduction here is unnecessary. Section 2 requires the secretary of state, immediately after the passage of the act, to cause a certified copy of section 1 to be published in a public newspaper of the proper county, the publication to be for a specified length of time. Further on in the same act, detailed provisions are made whereby any owner of any ditch in the water district may petition the district court having jurisdiction, praying for the court to proceed to an adjudication of the priorities of right, and the court is required either to proceed to make such adjudications directly, or to refer the whole matter to a referee to take evidence and report a decree. Ample provision is made for personal service of notice upon ditch owners, and for publication of notice for those who cannot thus be served, and this notice requires not only all owners of ditches and other persons interested therein, but also all persons interested as *owners or consumers of water*, to be present at the hearing provided for, and present proofs of their priority of right to water by appropriation.

Provision also is made for posting copies of the notice in ten public places in the water district. At the time provided for, the court, or the referee, as

the case may be, must proceed to hear the proofs of all of the parties interested, and provision is made for a decree establishing the relative priorities of the various ditches, reservoirs, etc., in the water district. The decree which these proceedings contemplate must number the several ditches and canals concerning which adjudication is made, in consecutive order, according to the priority of appropriation of water thereby made. The proceeding does not contemplate that there shall be an adjudication of the relative rights of the owners or consumers of water under any particular ditch, as between themselves, but only the relative priorities of the ditches, canals and reservoirs.

Enough has been stated concerning the object of these proceedings and the subject-matter necessarily involved therein to enable us to discuss intelligently the propositions involved in the present controversy. The argument of the plaintiffs, as we understand it, may thus be summarized: They say that the irrigation statutes contemplate an adjudication merely of the relative rights of those who own the different ditches, and that the decree awards priorities to these ditches, as such, and in no sense are the rights of the consumers or appropriators of water involved or considered therein; that the plaintiffs, as water consumers, were not, and could not be, made parties to the former statutory proceeding, and that the Rocky Mountain Water Company, the owner of the ditch through which the plaintiffs enjoy their appropriations, was not their representative or agent, and did not act for them in obtaining its decree.

The claimants are entirely wrong in their construction of these acts. The irrigation statutes do say that there shall be an adjudication of the priorities of appropriation of water between ditch compa-

nies and other owners of ditches drawing water for irrigation, but they further say that there shall also be an adjudication of all other questions of law and questions of right growing out of, or in any way involved or connected therewith.

Plaintiffs say that, in the statutory adjudication, the thing sued for and the thing judicially determined is the right or franchise which the law granted to the Rocky Mountain Water Company by reason of its owning a water-way, to conduct the quasi-public business of carrying water for others, regardless of the ownership of the water rights; while the thing sued for by the plaintiffs in the present action is the private right to use water out of a stream which may, or may not, employ a carrier; but, in no case, they say, is such a right identical with the public privilege of the carrier.

This reasoning, while in a sense correct, is clearly wrong as applied to the facts of this case. In *Irrigation Company v. Downer,* 19 Colo. 595, it is said that the statutory proceeding to adjudicate the right to the use of water is not an ordinary action or proceeding, it is *sui generis;* and in other decisions of this court, it is spoken of as in the nature of a proceeding *in rem.*—*Louden Canal Co. v. Handy Ditch Co.,* 22 Colo. 102, 113. The statutes are in the nature of police regulations to secure the orderly distribution of water for irrigation purposes, and to this end they provide a system of procedure for determining the priorities of rights as between carriers. Priority, however, is a relative term, and, in the Downer case this court, by Mr. Justice Elliott, says that an adjudication of such priorities is the judicial determination of the claims of different parties to the use of water for irrigation within the same district. The decree is required to specify, among other things, the amount of each party's appropriation, and the order

in which he is entitled to enjoy the same, and to do this the claims of the several parties must be considered in the same proceeding.

In *Independent Ditch Co. v. Agricultural Ditch Co.*, 22 Colo. 513, at page 524, the court says, as plaintiffs here contend, that the statute provides for a decree awarding priorities to the several ditches, and not to those claiming water under them. But the court immediately remarks: "It is, however, necessary, in making proof, to show that the water has been actually applied to the land, in order that a completed appropriation may be shown." While it is true that the priority decree is awarded to the ditch or ditch company which carries the water, yet in reality the thing decreed is a completed appropriation. Such appropriation consists of two acts: A diversion of water from a natural stream, and the successful application thereof, within a reasonable time thereafter, to some beneficial use. Where the consumer of water makes the diversion himself, a completed appropriation is made by the same person; but where the diversion is made by a carrier, and the successful application is made by another who is the consumer, a completed appropriation is the result of their combined acts. It is, as we have said, the completed appropriation for which a decree is awarded, and, while it is awarded to the ditch, it is made, as the decrees themselves specify, for the use and benefit of the persons lawfully entitled thereto. And, while no ascertainment is made as to who are consumers under any particular ditch, necessarily the relative rights of ditch owners and all consumers are determined.

As we have seen, the object of the statutory proceeding is to protect in their lawful rights all persons to the use of water for irrigation, and the act expressly provides that not only must there be a de-

termination of questions concerning the priority of appropriations of water between ditch companies, or ditches, but also all other questions of right growing out of or in any way involved or connected therewith. Certainly, the right to the use of water for irrigation by a consumer—that is, his right as an appropriator of water—is involved and connected with the right of the carrier. It is absurd to say that these proceedings merely contemplate a decree establishing the franchise or public right which the carrier owns of transporting water for hire to a consumer. Such franchise is obtained under the general incorporation laws of the state when the carrier, by complying therewith, gets its certificate of incorporation, which becomes the evidence of its right. All the elaborate machinery provided for in these irrigation statutes, and the great expense to the state the proceedings thereunder necessarily entail, were not contributed by the state merely to furnish carriers of water with proofs of their right to exercise their business, when such authority already exists in the office of the secretary of state. Indeed, the very subject-matter of the proceeding we are reviewing is the right to the use of water for irrigation, and the substantial thing decreed is such right.

The notice provided for requires not only persons who own ditches and canals which divert water from natural streams for the purpose of irrigation to present their claims and proof in support thereof, but all consumers of water under the ditches are notified to appear and offer proof. While the statute does say that it is the relative rights of the various ditches which are to be ascertained, and the decree nominally goes to the ditches, the decree is for the benefit, without specifying them, of those who own the rights to the use of the water.

In other words, the owner of the ditch is in this proceeding regarded as the representative of consumers thereunder, and, while the rights of the consumers to the use of water are distinct and independent of the rights of the carrier which transports the water for hire, yet the rights of the two combined constitute a completed appropriation, and it is the completed appropriation for which the decree is rendered. The decree embodies the rights, not only of the carrier, whatever they may be, but also the rights of its consumers. Applying these principles to the facts of this case, we have this result: By the former decree it is determined that the priority of the defendant High Line Company is superior to that of the Rocky Mountain Water Company, and that decree is binding, not only upon both of these companies, as carriers, but upon the consumers of water under their ditches.

There is no contention here that the particular rights to the use of water and the amounts claimed by the respective plaintiffs are not embodied in, and covered by, the decree which nominally was made to the ditch of the Rocky Mountain Water Company. While it may be true, as plaintiffs say, that they are under no obligation to continue to take water from that company and through its ditch, and that they may make other provision for its diversion from the natural stream, nevertheless they are bound by the provisions of the former decree as to the quantity of water they may have diverted for their benefit by their carrier, whoever such carrier may be.

We say that these plaintiffs had due notice of, and, through their representative or trustee, participated in, the former proceedings that ripened into a decree. It is clear that the subject-matter and the cause of action in the former proceeding is the same as that attempted to be litigated here, and that the

Rocky Mountain Water Company, as the agent or representative of plaintiffs, appeared and offered proof and received a decree for precisely the same rights which the plaintiffs are endeavoring to assert in this action, and this decree was for their use and benefit.

This court, upon several occasions, has held that a ditch company, by means of which water consumers enjoy their appropriation, is the trustee and representative of the consumers for the protection of the rights of the latter. These announcements define the duty of the companies after the decree is made, but the principle is just as applicable to the duty of ditch companies to respond to the notice given in the statutory proceeding in which the decree was made. And when due notice was given to the Rocky Mountain Company, as to which there is no dispute, it was the duty of that company to appear in the proceedings, as it did, and offer the proof upon which the decree to its ditch was made, which included the rights of plaintiffs to their respective appropriations.—*Wheeler v. Northern Colo. I. Co.*, 10 Colo. 582, 592; *F. H. L. C. & R. Co. v. Southworth*, 13 Colo. 111, 121, 132; *Ind. Ditch Co. v. Agr. Ditch Co., supra; Canal Co. v. Loutsenhizer D. Co.*, 23 Colo. 233, 235.

It also sufficiently appears, notwithstanding the denials of the plaintiffs, which are mere conclusions of law, that, ever since this decree was made, in 1884, they have recognized it, and have continued to receive water and apply it upon their lands in accordance with its provisions. This court takes judicial cognizance of these irrigation statutes, and they provide that the distribution of water for irrigation from the natural streams of the state must be made in accordance with the decrees of the court in the statutory proceeding, and not otherwise. After these decrees were rendered, distribution of water for such purpose

could not be, and has not been, otherwise made, and the attempted denial of plaintiffs that they have recognized this decree or received their appropriations thereunder is unavailing, it being merely their conclusion that their enjoyment of the rights given or recognized by the decree does not estop them to repudiate it.    In this contention, they are wrong. —*Handy Ditch Co. v. South Side Ditch Co.*, 26 Colo. 333.

In every water district in the state there are undoubtedly ditch companies which carry water for hire, just as the Rocky Mountain Company carries water to the plaintiffs.  If the contention of plaintiffs is good, and water consumers under such ditches are not bound by the former decrees, all of the time and the enormous amount of money which the state has expended in adjudicating these priorities go for naught, and every decree in every district in the state could be upset, and the state would have to begin anew the settlement of relative priorities.  In view of such considerations, the courts should long hesitate, and, indeed, refuse, unless it is clear that the law imperatively demands it, to bring about such disastrous results.

· The judgment of the district court is right, and it is affirmed.                      *Affirmed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE STEELE concur.