[No. 5532.]
[No. 3207 C. A.]

CITY AND COUNTY OF DENVER ET AL. V. WALKER.

1. **Water Rights — Appropriation —** The enjoyment by a citizen of water from a ditch owned by the municipality, by mere permission or acquiescence of the municipal authorities, does not amount to an appropriation.—(389)

2. **Evidence—Variance—**Averment of the right to the use of water by appropriation is not supported by evidence of such right based upon grant.—(391, 392)

3. **Decree—Inconsistency—**The court having declined to determine whether the defendant was obliged to carry and deliver water to plaintiff free of charge, was inconsistent when it decreed that such service should be performed without any compensation at all.—(393)

4. **Water Rights—Ditch Owner—Right to Change Line of Ditch**—A municipality owning a ditch which supplies water for the irrigation of the public parks and the lawns and gardens of private citizens, has the undoubted right to at any time change the line of the ditch to effect a more economical use of the water.—(394)

*Error to Denver District Court*—Hon. FRANK T. JOHNSON, Judge.

Mr. H. A. LINDSLEY, and Messrs. ALLEN & WEBSTER, for plaintiff in error.

Mr. J. WARNER MILLS, for defendant in error.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiffs, who are owners of two adjoining, five-acre tracts of land situate in the city of Denver, designated in the record as lots 5 and 6, and who also claim to be owners, through their grantors, of an independent appropriation of the right to the use of water for irrigating these tracts, and to utilize the same through a ditch belonging to the defendant city, brought this action against defendants, the city council of Denver and its board of park commissioners, who have immediate supervision and control of the City ditch, to restrain defendants from doing certain acts which it is alleged they are about to do, or by a mandatory writ compel them to make such changes in their plans already carried out, which, unless the appropriate relief is given, will result in depriving plaintiffs of their alleged water right. The defendants, answering, deny that plaintiffs are appropriators of any water through the City ditch, and allege that defendants' threatened, or completed, acts in relation to the City ditch, which plaintiffs charge are wrongful, are only such acts as they, owners and controllers of the same, have a perfect legal right to perform. Upon the final hearing the

court found the issues for plaintiffs, and the decree went accordingly, from which defendants are here with this writ of error.

Neither the complaint nor the evidence is definite, or precise, as to the alleged rights of plaintiffs. Assuming, however, as do the attorneys for the city, that the complaint alleges an appropriation of water, and that, as against a general demurrer, it is sufficient, we are entirely clear that the evidence does not sustain its allegations. The complaint alleges that plaintiffs' grantors, about the year 1867, diverted water from the South Platte river, and by means of what is now the City ditch carried the same to, and used it upon, the premises in controversy, and ever since that time plaintiffs and their grantors have continued so to use water upon the lands for raising agricultural crops. The evidence by which plaintiffs sought to establish their case does not have the probative effect claimed for it; indeed it falls far short of it. There is not a particle of evidence that plaintiffs' grantors ever made, or acquired, an appropriation of water from the South Platte river, by any means. Perhaps it inferentially appears, or is virtually admitted, that, by means of the ditch in question, an appropriation of water was made by the grantor of the city which right, at least after its acquisition by the city, has been applied by the municipal authorities in irrigating lawns, gardens, trees and parks of the city, and of its inhabitants, under appropriate municipal regulations, not shown by the evidence. The main City ditch crossed the corner of one of these lots of plaintiffs. It may be that from water carried therein plaintiffs' grantors, through some arrangement with its then owner, irrigated their lands; but as to what that arrangement, if any, was, the record is silent. Some light, however, is thrown upon the custom, or regulation, of

delivering water after the city acquired the ditch by
the testimony of Mr. Dailey, one of plaintiffs' wit-
nesses.   He says that about 1870 he, and possibly
some other residents of the city, constructed, with
the consent of the city authorities, a lateral from the
main ditch across the tracts of land now owned by
plaintiffs, through which water was used for irri-
gating trees of the builders lying beyond plaintiffs'
premises.   Dailey testifies that this, so far as con-
cerns the taking of water from the ditch, was with
permission of the city council, and not as of right—
merely such privilege, or use, as citizens generally
were permitted to make of the water therefrom; and
apparently plaintiffs' grantors made no objection to
the lateral being built on their land.   After plain-
tiffs acquired their interests it seems that the city
authorities desired to build a lateral from the main
ditch across their tracts, or to enlarge the lateral
already there, for the purpose of conveying water
therethrough for use by its inhabitants in certain
portions of West Denver, and that the mayor and
the city council, or a committee of the council, came
to plaintiffs' premises for the purpose of making
the necessary arrangements to carry out the munic-
ipal purpose.   One of the plaintiffs testifies that
the mayor, upon that occasion, said to plaintiffs that
if they would permit the lateral to be built, or en-
larged, the city would give them the use of water for
their premises; and that the city built the lateral, or
flume, and ever since that time plaintiffs have en-
joyed the use of the water without compensation.

It should be observed, first, that there is no
evidence that this offer was accepted by plaintiffs,
or that the city authorities entered upon their lands
and made the necessary structures in pursuance of
any such arrangement.   On the contrary, one of the
plaintiffs testifies that she told the mayor that she

would much rather pay for the water. This conversation also pretty effectually proves that, up to that time, plaintiffs did not own, or claim that they owned, any water right, or that the city was obliged to deliver water to them without compensation, else they would not be negotiating with the city to secure already existing rights in return for a right of way for the City ditch across their lands, nor would they say they preferred to pay money than to give a right of way as the purchase price of water. We are compelled to conclude, on plaintiffs' own showing, that they, at this time, recognized that they were not entitled to the use of the water from the City ditch, because they owned an appropriation, but, if at all, as the result of a contract or permission from the city.

The city attorneys say that under its charter and ordinances, existing at the time, it was beyond the power of the mayor, or committee of the council, thus to make any such contract, if in fact they assumed to do so; that such contracts are positively forbidden, both by its charter and ordinances, and that plaintiffs are presumed to know the law, and that they could not, by any such contract as they claim, acquire the rights which they here assert. That point, however, we are not obliged to decide. If it be assumed that the mayor, and committee of the council, had such power and that it was, in fact, exercised, no such right is asserted or claimed in the complaint. That pleading alleges that plaintiffs are independent appropriators of water and have the right to utilize it through the City ditch. The evidence, if it amounts to anything at all, goes only to the point that the right which plaintiffs allege is about to be infringed was acquired as the result of a contract with the city. Not only is the complaint silent as to any right of plaintiffs to this water by

contract with the city, but if the right asserted was based on a grant, and not on an appropriation, and so alleged in the complaint, the evidence signally fails to show what the contract is so as to warrant the court in enforcing it.  The variance is a substantial and fatal variance.  The specific objection was made by defendants in their motion for a nonsuit, and was renewed at the close of all the evidence.

Again, if plaintiffs, by contract, are entitled to the use of water from the City ditch, the decree is radically wrong.  The rights of an independent appropriator of water, and of one whose only right to have water carried and delivered to him is the result of contract, are not the same, but in many respects essentially different.  Yet the court in its decree, which is based on the complaint alleging ownership of an independent appropriation, which was not proved, gave to plaintiffs all the rights that such ownership confers, in the face of the evidence of plaintiffs themselves that they claimed under a contract.  The evidence is uncontradicted that defendant city, in the exercise of its undoubted legal right, has changed, or was about to change, the line, or course, of its ditch in order to make a more economical use of the water; that the new line does not touch any portion of plaintiffs' lands, and that as a necessary result their water box, through which they had previously withdrawn water from the main ditch, was rendered useless, as, after the change of the course of the ditch it was no longer connected with the source of supply.  The court decreed that plaintiffs are the owners, by reason of an appropriation, of ten statutory inches of water out of the City ditch, and are entitled to have the same delivered by defendants through that ditch at the point in lot 5 where the same has heretofore been accustomed to be delivered at plaintiffs' water box situated thereon,

and that defendants, without any expense or annoyance to plaintiffs, must turn the same out of the City ditch during the usual irrigating season, so that it will reach and flow into the water box at the place of its original location; and the court perpetually enjoined defendants from in any way obstructing or interfering with plaintiffs' full enjoyment of that quantity of water, during each irrigating season. We think this is wrong, not only because plaintiffs did not prove ownership of an independent appropriation, but also because the court had, in another clause of the same decree, expressly declined to determine whether defendants are obliged to carry and deliver water to plaintiffs free of charge. That it refused to declare that it was incumbent upon the defendants to do so was, doubtless, because there is no evidence upon which it could make a finding that any such duty exists. Being unable to determine the duty of the city in the premises, at least not having done so, it is manifestly inconsistent and wholly unauthorized in another part of the decree for the court to require defendants to carry and deliver water without any compensation at all, or without determining what the compensation should be. Possibly the meager, rather the absence of any, evidence bearing upon the relative rights and obligations of these parties, is due to the fact that no such evidence exists. But plaintiffs are not entitled to this decree in the absence of a showing of the rights they allege, and a corresponding duty of defendants to furnish the facilities for their enjoyment.

Whether the appropriation through the City ditch was originally made for the city's benefit, does not appear and possibly it is not important in this case; but it would seem from the record that, at least after the city acquired the ditch and its accompanying water rights, it has so used them as a source of

supply of water for the purpose of irrigating trees, lawns, city parks and municipal property in the city of Denver, lying thereunder. Whether the city can discriminate in the use of water between its inhabitants similarly situated, or whether that point is here involved, we do not determine. However that may be, it is entirely clear that plaintiffs' case, as made by the complaint, was not proved. The decree is reversed and the cause remanded.

*Reversed and remanded.*

CHIEF JUSTICE STEELE and Mr. JUSTICE MUSSER concur.