PIONEER IRR. CO. v. BOARD OF COMR'S OF YUMA COUNTY, COLO.

(District Court, D. Colorado. October 9, 1916.)

No. 6486.

WATERS AND WATER COURSES ☞131—DIVERSION BY DITCH COMPANIES—PROPERTY RIGHTS IN WATER.

Under Const. Colo. art. 16, § 8, and Rev. St. Colo. 1908, §§ 3263–3268, relating to water rights, as construed by the Supreme Court of the state, no property right can be acquired in the use of water until it is applied to a beneficial use. The owner of a carrying ditch, in making the diversion from a natural stream, acts solely as the agent or trustee for him who applies the water to a beneficial use, and gets no title in or right to the use of the water, and has no property in it subject to disposal, but such property and right of disposal is in him who applies the water to a beneficial use.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. ☞131.]

In Equity. Suit by the Pioneer Irrigation Company against the Board of County Commissioners of Yuma County, Colo. Decree for defendants.

Park & Gibson, of Denver, Colo., for plaintiff.

Jo. A. Fowler, of Denver, Colo., for defendants.

LEWIS, District Judge. This is a bill for an injunction against the enforcement of carrying rates for water in the plaintiff's canal or ditch fixed by the Board of County Commissioners. The plaintiff is the owner of the Haigler canal which receives its waters from the North Fork of the Republican River in Yuma County, Colorado. It extends from its headgate on the south bank of that stream to the state line between Colorado and Nebraska a distance of about seven miles, and thence in Nebraska about eight miles more. It was constructed in 1890 as a carrying canal and it has ever since served the purpose of furnishing water to farmers in Colorado and Nebraska for irrigation. Its relative priority to divert the waters from the stream was not fixed by adjudication until 1912 and 1914. In July of the first named year it obtained a decree fixing its priority and adjudging to it the right to divert fifteen cubic feet per second for the irrigation of lands in Colorado, and in the latter year it was adjudged to have the right to divert twenty-nine cubic feet per second, to be measured at the state line for lands in Nebraska. The lands in Colorado which it has heretofore served aggregate about 790 acres, and the bill alleges that none of the owners of said lands are the owners of the water carried in the canal, except the owners of 96 acres, approximating one and a half cubic feet per second, all of the other users being annual renters of water.

The plaintiff petitioned the board to fix the carrying rates which it should exact from the users of water from the canal as the state statute provides may be done, and in October, 1915, the board, after hearing the parties in interest, fixed the rate at the sum of $1.83 per acre.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The complaint is that the rate is too low and confiscatory, that the board

"in fixing said rate of compensation refused to consider the value of the water owned and carried by the said plaintiff in said ditch for the use of persons renting water annually therefrom, and refused in fixing the said rate to allow any compensation whatever to the plaintiff for or on account of such water to be carried by the plaintiff and furnished to farmers under said ditch upon an annual rental charge. That said rate so fixed by the said county commissioners requires the plaintiff to carry water, which it has appropriated and diverted and has a decree therefor and is the owner thereof, and deliver the same to farmers under said ditch for use without any compensation whatever, thus depriving the plaintiff of its property and compelling it to deliver the said water so owned by it to farmers under said ditch in the State of Colorado who have no property right therein for the purpose of irrigating approximately 695 acres of land; that the water so carried and required by said order to be delivered by the plaintiff to said farmers is of the reasonable value of $34,750; that the plaintiff is by law entitled, when required to furnish such water to farmers who are not owners of the water, to a reasonable return upon the value of said water."

The answer admits that the plaintiff has acquired the right to divert water from the river and carry the same through the canal for use in the irrigation of crops; admits that the board refused to recognize ownership of the water in the plaintiff or to consider such claimed ownership in the fixing of rates or to allow it anything for the water carried. It alleges that the users of the water are the owners of the right to its use, and that at the hearing the board took into consideration in fixing the rate all of the testimony adduced, such as the original cost, construction and present value of the canal, its headgates, dams, water-boxes, and the evidence as to the cost of maintenance and operating the same, the number of acres irrigated, the production and the benefits therefrom, but rejected the claim and contention of the plaintiff that it had any property right in the water or its use and ignored plaintiff's claim in that respect in fixing the rate.

There is diversity of citizenship. At the final hearing the controversy was submitted on the pleadings, and a written stipulation filed in the cause as follows:

"It is hereby stipulated and agreed by and between the parties hereto for the purpose of this trial, and it is admitted, to-wit:

"The sole question to be determined in this case is whether or not the Board of County Commissioners should have taken into consideration, in fixing the rates to be charged by the plaintiff for the carriage, distribution and delivery of water, the value of such water delivered to the class of consumers hereinafter described.

"Since the construction of the ditch the class of water users to which the rate fixed by the County Commissioners in 1915 applies were those users who have, since the construction of the ditch in 1890, paid annually an annual rate without any other contract with the plaintiff company other than a receipt for the amount of money paid for such carriage, and an agreement to conform to the rules and regulations of the company in distribution, measurement and application of such water, and they have so conformed, none of which such land owners has ever paid the plaintiff company any amount of money for the purchase of a perpetual water right, or any other amount than the annual carriage charge.

"Some of such annual users have used the same amount of water continuously. Others have used some of the water continuously but from year to year would either increase or decrease the acreage applied and paid for. Two or three have used it only intermittently. All of said water having been

used by such users for a beneficial purpose during all of said time. Plaintiff has not personally put any·of said water to a beneficial use nor does it own any land under the canal.

"It is agreed that the rights contended for.by the plaintiff exceed in value the sum of Three Thousand Dollars ($3000.00)."

I suppose the plaintiff was induced by San Joaquin, etc., Co. v. Stanislaus County, 233 U. S. 454, 34 Sup. Ct. 652, 58 L. Ed. 1041, to exhibit this bill. But I am not able to accept that case as a support to the plaintiff's claim. The Constitution and statutes of California empowered the carrying company in that case to appropriate water for sale, and in the exercise of the right thus given it acquired for that purpose some of the water by mere diversion from the natural stream and purchased some of it. A carrying ditch in Colorado is not given such power and cannot acquire such rights as a carrying ditch. There is merit in the contention that our Constitution (Article XVI, Sec. 8) and statutes (Rev. Stat. Col. 1908, Secs. 3263–3268) could be given a like construction, but our Supreme Court has decided otherwise. Wheeler v. Irrigation Co., 10 Colo. 582, 17 Pac. 487, 3 Am. St. Rep. 603; Canal & Res. Co. v. Southworth, 13 Colo. 111, 21 Pac. 1028, 4 L. R. A. 767; Wyatt v. Irrigation Co., 18 Colo. 298, 33 Pac. 144, 36 Am. St. Rep. 280; O'Neil v. Canal Co., 39 Colo. 487, 90 Pac. 849; Combs v. Canal & Res. Co., 38 Colo. 420, 88 Pac. 396.

If I rightly understand these cases, they hold: (1) the owner of the carrying ditch in making the diversion from the natural stream acts solely as the agent or trustee for him who applies the water to a beneficial use, (2) gets no title in or right to the use of the water and has no property in it subject to disposal, and (3) he who applies the water thus diverted to beneficial use acquires a property right in the use of the water thus applied which he, and he only, can sell, dispose of and convey by deed separate and apart from the land to which it has been applied or with the land to which it has been applied. The last proposition is made more certain by Strickler v. Colorado Springs, 16 Colo. 61, 26 Pac. 313, 25 Am. St. Rep. 245; Irrigation Co. v. Res. Co., 25 Colo. 144, 148, 53 Pac. 318, 71 Am. St. Rep. 123.

No·property right can be acquired in the use of water until it has been applied to'a beneficial use. Thomas v. Guiraud, 6 Colo. 530; Coffin v. Ditch Co., 6 Colo. 443; Highland Co. v. Union Co., 53 Colo. 483, 485, 127 Pac. 1025.

There is no claim on the part of the plaintiff that it has ever used any of the waters in question to irrigate its lands or otherwise applied them to beneficial uses. Its contention, therefore, before the board of commissioners that it was the owner of the waters or of the right to their use and that by virtue of that ownership it was entitled to receive something from the users of the waters to whom they were delivered, was, in my judgment, rightfully rejected by the board in considering the question presented to it when it came to fix the rates for carriage which the plaintiff should receive.

I have not overlooked Denver v. Walker, 45 Colo. 387, 101 Pac. 348, and Denver v. Brown, 56 Colo. 216, 138 Pac. 44, but they are not in point. In neither of those cases were the rights of a carrying ditch involved. Those cases involved controversies between claimants to

the right to use water on the one hand, and appropriators who had diverted and applied to beneficial uses, or their grantees, on the other hand, to a claimed surplus of water not needed or applied for the time being by the appropriator.

However, my conclusion, thus stated, on the only issue presented is not an approval of what appears from the pleadings and argument at the bar to have been the basis adopted by the board in fixing the rates. It seems to have considered for that purpose only the cost, physical value and up-keep of the carrying canal and its physical adjuncts. The basis is too narrow, and if rigidly applied would be unjust one way or the other. Lands taking water from such a canal are usually too remote from the stream to justify the necessary expenditure by each owner separately to bring the water to his tract. The expenditure required would operate as a permanent prevention to the acquisition of the right. Early action by the carrying ditch and the priority obtained by it may furnish the land-owner an opportunity to avail himself of something of great value, and thus the amount of water diverted and the priority obtained for the carrying ditch become an inseparable part of the enterprise which necessarily fixes its value as a property and the resulting advantages to lands which it may serve. On the one hand, the amount of water diverted and the priority obtained for it by the carrying ditch might render the enterprise of small value to the owner and slight benefit to those taking water from it, while on the other, the priority obtained for the diversion would be such as to render the enterprise as a property of great value and its service to those whom it would serve large in beneficial results. In the one case it would be unjust to the irrigator to require him to bear the cost and up-keep of the canal if the priority was such as to deny him the use of the water when most needed, and likewise unjust to the carrying canal to allow it rates fixed only on the cost and up-keep if the priority gave an abundance when most needed. To illustrate: two carrying canals equal in cost and up-keep and diverting the same amount may serve an equal number of acres with vastly different results. One obtains the first priority, the other obtains the last. Under the first the users obtain an ample amount of water and their crops are abundant; under the other, water cannot be had when most needed and the yield is scant. A carrying canal is not like a railroad which brings you what you want when you pay the freight; it can only furnish water according to its priority—that is, when obtainable under the right which it acquired. It diverts water and obtains, by its foresight and effort, the priority for the benefit of the user of water. When the user receives his water from the canal he not only takes advantage of the service rendered in the mere carrying of the water to him from the stream, but of vastly more importance to him is the acceptance and adoption by him of the priority of diversion obtained by the canal for his benefit, and this diversion and its priority is an integral part of and inseparable from the ownership of the physical structure; and a just and fair rate for the service rendered by the owner of the canal cannot be fixed without its full consideration. But this element was not, according to the terms of the bill, presented to the board for its con-

sideration and is not included in the stipulation of facts presenting the only issue for determination, and, of course, is not now adjudicated.

Having determined the only issue presented against the plaintiff, the bill will be dismissed at plaintiff's cost.