266 P.2d 392

**SKINNER  v.  GRAHAM CANAL CO. et al.**

No. 5682.

Supreme Court of Arizona.

Feb. 8, 1954.

Anderson & Smith, Safford, Jennings, Strouss, Salmon & Trask, Phoenix, for appellees.

WINDES, Justice.

The appellee, Graham Canal Company, hereinafter designated Graham, is a corporation organized and owned by land owners for the carriage and distribution of water for irrigation theretofore appropriated by such owners from the Gila River. Prior to the year 1918 there were two canal companies, Oregon Canal Company, hereinafter designated Oregon, and Graham, with separate points of diversion and carrying facilities. The owners under Oregon were located downstream some four or five miles from owners under Graham. Due to Oregon's means of diversion being destroyed, in the year 1917 or 1918, some oral arrangement was made between these two companies and the land owners to use the point of diversion of Graham for the purpose of diverting water for both and utilizing their respective canals for transmission. The two companies thus operated as separate corporate entities until the year 1938 when a written contract was en cred into between the companies on behalf of the land owners being served by them, reciting in substance that the two companies were operating what was known as the Graham-Oregon Canal; that operation under the dual management entailed difficulties; that a majority of the stockholders of each company had determined that a merger would

Chester J. Peterson, Safford, Knapp, Boyle, Bilby & Thompson, Tucson, for appellant.

be advantageous. The contract then provides that in order to effect the desires of the stockholders, there should be such a merger, Graham to increase its stock and the Oregon owners to exchange their stock therein for new stock issued by Graham. This contract contained the following provision:

"That in seasons of the year when the water is on turns, the water will be issued to the land owners holding old Graham stock, or Graham stock issued prior to the date of this agreement, on the basis of six minutes per acre for a regular irrigation stream. That all water issued to the land owners owning new Graham stock, issued after the date of this agreement, will be issued said water on the basis of five minutes per acre for a regular irrigation stream. It is understood, however, that during the course of any given year, the lands being served by the new Graham stock shall be given the same amount of water per acre as is allotted to the lands having old Graham stock, provided that the old Graham stock shall not be required to make up any deficiency in the amount of water because of the length of the extension canal or its laterals."

A dispute arose concerning the enforcement of the foregoing quoted provision of the contract. The appellant F. M. Skinner filed a complaint on behalf of himself and all stockholders of Graham who were such prior to the merger against Graham Canal Company, a corporation, Guy Anderson, J. David Lee, and Vance Marshall, as owners of stock in and land under the Oregon and as representatives of all stockholders similarly situated. It is thus a law suit between the owners heretofore served by Graham and those heretofore served by Oregon or their respective successors in interest.

The complaint sets forth the contract; alleges that the defendants refuse to recognize the validity thereof and abide by its terms; alleges the validity of the contract and asks that the court determine the validity thereof; asks that the defendants be required to specifically perform the same.

Defendants' answer asserts the invalidity of the contract in that it purported to deprive a portion of the owners of the right to use waters on an equal basis; alleges the same could be enforced on an equal basis as to all land owners and that defendants to the extent they are owners of valid water rights are entitled to have water delivered on such basis. The answer also alleges the existence of what is commonly called the "Doan decree" rendered by the Territorial District Court in 1905 and what is known as the "Sames decree" rendered by the United States District Court in 1935 and says the plaintiff is estopped to claim the right to discontinue the delivery of water to the defendants through the facilities of Graham. Defendants pray for judgment that plaintiff and defendants are all entitled to delivery of water upon equal terms and

in equal amounts according to the acreage owned by the respective individual parties.

After trial before the court sitting without a jury, it made findings of fact to the effect that the stock was exchanged by the holders thereof as provided in the agreement; that the amount of water delivered was determined according to the type of stock of the particular land owner; that under the agreement the amount received and the manner in which it is furnished bears no relation to the date of appropriation, and the system of distribution effects a transfer, alteration or change of vested water rights; that the system of distribution has not been consistently followed and has been a continuous source of disagreement; that from 1918 to 1938 the cost in connection with the improvement, maintenance and operation of the canal had been borne by both companies and there was no basis upon which the parties could be placed in status quo.

Based upon such findings the court concluded as law that there had been a de facto merger of the two companies; that the quoted provision of the contract was void; that it violated the Sames decree; that there was no legal or equitable basis for restoring the parties to status quo; that Graham was obligated to deliver water to the land owners on equal terms and conditions; and that transmission loss from the point of diversion to delivery must be borne by the land owner. Judgment followed declaring the quoted portion of the contract void; denying restoration of the parties to their status prior to the contract; requiring that Graham continue to carry water to all land owners upon equal terms and conditions; and stating that the legal priorities to the use of the water are not determined. From this judgment plaintiff appeals, and submits appropriate assignments of error to support a consideration of the matters considered herein.

From a reading of the record it appears quite clear that beginning about 1917 and until 1938 when the written contract was entered into, these two groups of land owners had an oral arrangement to take all water from the Graham diversion point. At that time the right to the water and manner of distribution thereof was based on stock ownership. During this entire time there was no one uniform period that each was to use the water. For several years they divided the stream and later ran the entire stream to the respective groups six days each and allowed one day for transmission, to the end that each group would get an equal division. After years transpired and apparently as a result of dissatisfaction with the method of division and delivery and after much negotiation between the representatives of the respective land owners, the written contract was born. It also appears from the testimony of the witness Jesse A. Udall, the attorney who drew the contract in question, that in 1938 they attempted to base the right to water on an acreage basis.

From the findings of fact, conclusions of law and judgment, it is apparent that the trial court viewed the contract as requiring a distribution of water on a stock rather than acreage basis; that it effected a transfer or change of vested water rights; that it violated the terms of the Sames decree; that the contract was not binding on the individual owners for the reason that the companies could not legally transfer or divest their water rights; and that all parties were entitled to delivery upon equal terms and conditions. We assume the court means upon equal terms and conditions in proportion to the acreage owned, since this is defendants' allegation and contention.

We are unable to construe the contract as operating to transfer any vested water rights from one land owner or group of land owners to another, or as requiring distribution on a stock basis. It expressly provides that the new Graham stockholders (formerly Oregon) shall be given the same amount of water per acre in a given year as the old Graham stockholders (formerly Graham). This is in harmony with the Sames decree which allots annually to all the parties not to exceed six acre feet per acre. The contract requires that the Oregon owners be charged with loss because of the extension of the canal. In other words, Oregon owners under the terms of the contract must sustain their transmission loss. This likewise is in harmony with the Sames decree which provides that the user shall be charged with conveyance loss from point of diversion.

It is apparent that what is irritating the defendants is the transmission loss and the provision in the contract that when water is on turns, plaintiff gets an irrigation stream issued on the basis of six minutes per acre whereas defendants get the same stream issued on a basis only of five minutes per acre. From defendants' pleadings and prayer we interpret their contention to be that this amounts to an unequal division of the water in favor Graham owners. Defendants allege they are entitled to water on an equal basis and that the agreement could be and should be enforced to accomplish this, and they ask for a judgment to that effect.

The trial court apparently was of the view that the quoted provision of the contract was void because, under its terms, delivery was not to be made to the respective owners according to the dates of appropriation as reflected in the Sames decree and then rendered judgment requiring delivery on an equal basis. Equal basis delivery is not in accordance with the Sames decree which gives senior appropriators the right to first and prior call to the extent of their respective appropriations over junior appropriators. The lower court's decision is, however, harmonious with the terms of the contract if, properly construed, it provides for equal delivery. We take it, therefore, from the nature of the decree rendered that the trial court adopted defendants' theory that they were entitled to equal delivery subject to transmission loss, but apparently was of the opinion that the por-

tion of the contract which provides for the method of delivery did not accomplish this purpose and was for this reason void. Defendants do not challenge the right or power to make such a contract. Some arrangement for economical use of the water under these conditions is not only desirable but essential, and the advisability thereof is not only recognized by our statute, Laws 1919, Chapter 164, Sections 45 and 46, A. C.A.1939, Section 75–134, but they are generally recognized as valid. 2 Wiel, Water Rights, Vol. 2, § 1343; Rominger v. Squires, 9 Colo. 327, 12 P. 213; Farmers' High Line Canal & Reservoir Co. v. Southworth, 13 Colo. 111, 21 P. 1028, 4 L.R.A. 767; Huntsville Irr. Ass'n v. Rollo, 56 Utah 442, 191 P. 423.

■ ■ Defendants want the contract enforced except as to method of delivery. We say, therefore, that if the contract, properly construed and enforced, accomplishes reasonable equality, as intended by the parties, it is binding. As heretofore stated, it provides that each shall get an equal allotment of water; it recognizes that Oregon users shall bear transmission losses by reason of the length of the canal carrying their water; and it provides application to the land on the basis of six minutes per acre for Graham and five minutes per acre for Oregon. The evidence is that this differential was intended as an equalizing provision because of the transmission loss Oregon must bear. How is this loss to be measured? The trial court provides no method. Under the contract this method of measurement is attempted to be accomplished by the six-minute-five-minute provision. It seems clear that if each owner gets the same amount of water, and if the Oregon owners must consume a portion of theirs in transmission, they cannot require application to their lands of an equal irrigation stream for the same length of time as the owners who are not required to bear this transmission loss. There was some evidence indicating that in making delivery to Oregon, a stream of water depleted by transmission loss was allowed to run the five minutes per acre, whereas the same stream not so depleted was delivered to Graham for six minutes per acre. If such be the practice, of course, it would result in unequal distribution and would be a violation of the terms of the contract, but would not render it void. As we construe the contract, it contemplates delivery to Oregon users after depletion by transmission loss a stream of equal size as that delivered to Graham users before depletion but for a one minute less length of time. Only by this method can the one-minute period be given the effect intended, that is, to compensate only for the transmission loss. This one-minute per acre factor may not accurately compensate for this loss but the parties after long trial, experiment and negotiation agreed such was a fair solution. Exact equality is impossible. It would be impossible under the trial court's decree; it is impossible under any contract the parties might make. There is nothing

in the evidence to warrant the conclusion that this is not a reasonably accurate factor to use in accomplishing the purpose intended, and our view is that the courts may not disturb such agreement under the facts herein.

The trial court was of the opinion that the respective companies could not bind the individual land owners with such an agreement. This question can have no influence because the undisputed evidence and the unquestioned finding of the court was that all the owners consented to this by turning in their stock and causing the merger under the terms of the contract.

 The evidence shows that much of the water distributed was pumped from underground sources. At the time of the contract there were two pumps and since then, three have been added. In the year 1951 all of the water distributed was pumped water and on the average, it is about one-third. Certainly, there is no law that would prevent the parties from making any kind of contract concerning the pumping and distribution of these waters. The Sames decree can have no bearing on this feature of the problem since it is only concerned with stream water. The lower court's declaring this feature of the contract void has the effect of making a new contract for the parties with respect to the distribution of pump water and in this respect was erroneous. The contract has been interpreted by the parties as contemplating distribution of pumped water on the same basis as stream water and for this purpose is entirely valid.

There is much discussion by counsel on the questions of estoppel, accounting and placing the parties in status quo, ante, but in view of our disposition of the matter it is unnecessary to discuss these questions.

The judgment is reversed with directions to enter judgment declaring the contract valid and requiring its specific performance as herein interpreted.

PHELPS, C. J., and STANFORD, LA PRADE and UDALL, JJ., concur.