214

286 P.2d 210

F. M. SKINNER, Appellant,

v.

GRAHAM CANAL COMPANY, a corpora-
tion; Guy Anderson, J. David Lee and
Vance Marshall, Appellees.

No. 5985.

Supreme Court of Arizona.

July 18, 1955.

Chester J. Peterson, Safford, Boyle,
Bilby, Thompson & Shoenhair, Tucson,
for appellant.

Jennings, Strouss, Salmon & Trask,
Phoenix, Anderson & Smith, Safford, for
appellees.

PHELPS, Justice.

This cause has been twice before this
court and opinions rendered therein are
reported in 77 Ariz. 5, 266 P.2d 392, 396,
and in 77 Ariz. 137, 267 P.2d 1074. The
original opinion in the case, as will be
seen by reference thereto, construed a
written contract between the Graham Canal
Company, a corporation and the Oregon
Canal Company, a corporation, merging
the two corporations and providing for
the allotment and distribution of the water
available for irrigation as between the land-
owners under the old canals of the re-
spective corporations. The second opinion
was written on petition of appellant asking
for a clarification of the first opinion.

The original opinion reversed the judg-
ment of the lower court and remanded the
cause to that court with directions to enter
judgment declaring the contract valid and
requiring its specific performance as therein
interpreted.

Appellants submitted to the trial court a
form of judgment for its signature and ap-
pellees offered an amendment thereto. The

amendment was approved by the trial court and judgment entered accordingly. Appellant brings the case here again expressly limiting the issue presented to the question of whether the judgment entered by the trial court pursuant to the mandate of this court issued on March 24, 1954, requiring specific performance of the contract as interpreted in the opinion, conformed therewith.

Appellants claim that the judgment is greatly at variance with the mandate of the supreme court and "attempts to change and/or modify the opinion and decision of the supreme court."

For convenience we will undertake to parallel the court's interpretation of the contract between the canal companies with the judgment of the trial court involved in this appeal.

### Interpretation of contract by Supreme Court:

1. It is a valid contract.

2. The contract provides that each user shall get an equal allotment of water.

> "As we construe the contract, it contemplates delivery to Oregon users after depletion by transmission loss a stream of equal size as that delivered to Graham users before depletion but for one minute less length of time. Only by this method can the one-minute period be given the effect intended, that is, to compensate only for the transmission loss."

3. The Oregon users shall bear transmission losses by reason of the length of the canal carrying their water. The water shall be applied to the land on the basis of six minutes per acre for Graham users and five minutes for Oregon users. This differential is intended as an equalizing provision because of the transmission loss the Oregon users must bear.

### Judgment of Trial Court Pursuant to Mandate of this Court:

1. It is a valid contract.

2. Both the old Oregon Canal landowners and the old Graham landowners are entitled to receive and shall receive water from the Graham Canal from an irrigation stream of equal size (or an equivalent amount of water) at the point where it is diverted from said canal to their respective lands.

3. The old Oregon Canal landowners shall receive the water from said stream for five minutes per acre while the lands of the old Graham Canal landowners shall receive the water from said stream for six minutes per acre.

As indicative of the intent of this court relating to the allotment and distribution of water to the landowners under the old canals the court said:

"* * * It seems clear that if each owner gets the same amount of water, and if the Oregon owners must consume a portion of theirs in transmission, they cannot require application to their lands of an equal irrigation stream for the same length of time as the owners [Graham Canal owners] who are not required to bear this transmission loss. There was some evidence indicating that in making delivery to Oregon, a stream of water depleted by transmission loss was allowed to run the five minutes per acre, whereas the same stream not so depleted was delivered to Graham for six minutes per acre. If such be the practice, of course, it would result in unequal distribution and would be a violation of the terms of the contract, but would not render it void. * * *"

In the second opinion the court said with respect to the transmission loss:

"* * * This means all transmission loss of every kind or character whether from seepage, evaporation or time consumed in transmission, shall be borne by Oregon lands. The one-minute less time of run was to measure this aggregate loss."

A careful analysis of the language used in the judgment of the trial court with our opinion fails to reveal to us a noncompliance with our decision or with the mandate of the court.

Judgment affirmed.

LA PRADE, C. J., and WINDES and STRUCKMEYER, Jr., JJ., concurring.

UDALL, Justice (dissenting).

While the single question presented is a narrow one, I am unable to agree with the majority that the judgment entered by the trial court is in accordance with our clarifying opinion rendered on rehearing (77 Ariz. 137, 267 P.2d 1074) or with the mandate issued thereon. Concededly, these must correspond. In this last opinion it is stated:

"* * * we say that the contract provides that the *lands* of both Graham and Oregon are to receive the same amount of water per acre *with the exception that Oregon is charged with the loss of water caused by the length of the canal. This means all transmission loss of every kind or character, whether from seepage, evaporation or time consumed in transmission, shall be borne by Oregon lands. The one-minute less time of run was to measure this aggregate loss.*" (Emphasis supplied.)

It is my firm belief, as I shall attempt to demonstrate, that the following proviso of the judgment as entered, viz.:

"That pursuant to said provision the lands of both the old Oregon Canal landowners, defendants, and of the old Graham Canal landowners, plaintiffs, are entitled to receive, and shall receive, water from the Graham Canal from *an irrigation stream of equal size, (or an equivalent amount of water), at the point where it is diverted from said canal to their respective lands; * * *"* (Emphasis supplied.)

(a) twists or distorts words and constitutes an overreaching on the part of the trial court; (b) by judicial fiat establishes a new contract never contemplated by the parties; (c) and what is even more serious, places a burden on the Graham Canal Company of furnishing an equal size stream to Oregon users that is wholly impossible of fulfillment; (d) that by its terms it completely vitiates other provisions of their 1938 contract.

There are some undisputed basic facts with reference to the operation of this Graham Canal Company that must not be lost sight of if we are to realistically evaluate the pronouncement made on rehearing, supra:

1st. It is only " '* * * in seasons of the year when the water is on turns,' " i. e., during times of scarcity, that the water is distributed to the landowners " 'on the basis of six minutes per acre for a *regular irrigation stream'* " to the old Graham stockholders and " 'five minutes per acre for a *regular irrigation stream'* " (emphasis supplied) to the old Oregon stockholders [77 Ariz. 5, 266 P.2d 394]. It is interesting to note the testimony of Emery B. Hubbard, Graham Canal Company water boss. As to the meaning of the term "regular stream", he testified:

" * * * it's a stream of water if its a four hundred inch stream or if its two hundred. * * * we speak of a *regular stream* as *that available* issued by the water boss and that's the way I do it. * * *" (Emphasis supplied.)

2nd. We are here dealing with *only one irrigation stream*—made up of waters taken from the Gila River supplemented by the flow from five pumps located on the upper end of the canal. *This head of water is not divided but each landowner, in turn, uses the entire stream.*

3rd. *Measurement of water.* Heretofore the only measurement of water has been at the canal intake. Water has never been measured to the user at the head of his land as is now required by the judgment under review.

4th. *The irrigation pattern* regularly followed is to start the "turns" at the end of the ditch and work up to the user at the

head. (This usually takes approximately 12 or 13 days.) Then approximately a 24-hour-run is required to get the water back to the end of the ditch (a distance of some 16 miles) to start the next "turn". *This transmittal loss is borne by all stockholders* though it is solely caused by letting the Oregon users into the system.

5th. *Seepage and evaporation.* Unquestionably the loss in size of stream caused by seepage and evaporation is to be borne by each user but it falls most heavily upon those at the end of the ditch. The record discloses that it is not uncommon for *the stream* at the head to contain some 400 inches, while this *same stream*—when it reaches the end of the old Oregon ditch—has decreased to 250 inches. The following question, asked by Attorney Trask on cross-examination of water boss Hubbard, is enlightening:

"Q. Whatever there is in evaporation or seepage, that is borne by the lower end users of the canal? A. To whoever it affects and it affects the lower end. *It affects more on the lower end.*" (Emphasis supplied.)

The 1938 contract between the parties, as well as our supplemental decision on rehearing, expressly recognizes that this evaporation and seepage loss—which falls most heavily on the old Oregon users—must be borne by them. Nevertheless the lower court's final decree contains the impossible proviso that all parties (both the old Graham Canal users and Oregon Canal users) are to receive

*"an irrigation stream of equal size* (or *an equivalent amount of water)* at the point where it is diverted from said canal to their respective lands."

Quaere: Where is such an "equal size" stream to come from? I submit we cannot by judicial fiat wave a "magic wand" and increase it. From time immemorial those who have been unfortunate enough to own land at the "tail end" of a ditch—containing but one stream—have been at a disadvantage. They have suffered, as do these defendants, from the natural laws of evaporation and seepage. While I sympathize with their condition there is not much, as I see it, that this court can *properly* do to alleviate the situation which comes about by reason of their less advantageous position.

I fear the learned trial court and my brethren of the majority (all of whom hail from Maricopa County) are so accustomed to thinking in terms of the huge canals under the Salt River Project, where any water user can have *measured out to him at the head of his lands* the precise size of stream to which he is entitled, that they seem unable to visualize the operation of this comparatively small irrigation project in Graham County which has—in periods of scarcity—but *one irrigation stream* of water therein and no reserve head from

stored waters to supply the claimed deficiency for the lower users. Counsel for appellant, in their brief, have neatly summarized the effect of the last judgment entered. I quote:

"\* \* \*. Such a judgment as the trial court entered, instead of enforcing the agreement which this Court held to be valid, has the effect of rendering it a nullity. *If the appellees are entitled to have the same amount of water, in times of scarcity, without diminution or loss from seepage, evaporation or distance of transmission, the contract is meaningless.* Furthermore, it would be impossible to comply with the judgment rendered. The stream of water when it reaches the lands of appellees, many miles below the lands of appellant, is of necessity reduced by seepage, evaporation and other losses, *and, hence, it is not and cannot be of 'equal size.'* Therefore, in order for appellees to obtain an 'equivalent amount of water', it would be necessary for them to use the stream much longer per acre than appellant is entitled to use it, with the net result that the contract would have no force or effect whatever." (Emphasis supplied.)

To me this argument is irrefutable.

Counsel representing appellant submitted to the trial court a proposed form of judgment which I think should have been entered. It contained the following proviso:

"In seasons of the year when the water is on turns said water will be issued to plaintiff and the other landowners for whom plaintiff appeared, being the landowners holding old Graham stock issued prior to the date of said agreement, on the basis of six minutes per acre for a regular irrigation stream, and during said seasons of the year water will be issued to defendants and other landowners similarly situated for whom defendants appeared in this action, being the landowners owning new Graham stock, on the basis of five minutes per acre for a regular irrigation stream."

This "squares" with what I thought I was approving in signing the original decision and the supplemental decision on rehearing.

On the previous appeal we reversed the trial court and declared the contract between the parties to be a valid one. Now, with this latest judgment, which is being given the approval of the majority, that victory is wholly dissipated. Only confusion and frustration can result from affirming the instant judgment which, as I see it, does not agree either with our supplemental decision or the realities inherent in this case. It is for these reasons that I respectfully dissent.